UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF LOUISIANA

ANTWAIN T. JACKSON                              CIVIL ACTION

VERSUS
SAINT HELENA PARISH POLICE JURY;
ALBERT FRANKLIN

TRIAL BY JURY

## COMPLAINT

## JURISDICTION AND VENUE

1.     Plaintiff invokes this Court's jurisdiction pursuant to 42 USC §1983,   28 USC §1343(4), and 28 USC §1367.    Plaintiff invokes this Court's jurisdiction pursuant to 28 USC § 1331,   28 USC § 1343(4), 28 § 1367(a), 29 §2617, 42 §1983, 42 §12117, and 42 § 2000e-5.

2.     The factual circumstances alleged in this complaint occurred in the Middle District of Louisiana.

## PARTIES

3.     Plaintiff is a citizen of the United States and a resident of Saint Helena   Parish, Louisiana.

1

4.    Defendant Saint Helena Parish Police Jury("the Police Jury") is a political subdivision of the  State of Louisiana and is the governing authority of Saint Helena Parish, Louisiana.  The Police Jury   employs fifty or more employees.

5.    Defendant Albert Franklin was employed by the Police Jury in the capacity of Road Superintendent at all times alleged in this complaint. Franklin is being sued in his individual capacity and in his official capacity as an employee of the Police Jury.

## ADMINISTRATIVE PROCEDURES

6.    Plaintiff timely filed charges of employment discrimination and retaliation with the District Office of the Equal Employment Opportunity Commission. Those charge numbers are: 461-2021-01976; 461-2021-01978; 461-2021-01979; 461-2022-00276. That agency issued a right to sue letter which is attached and is labeled Exhibit 1.  All allegations of fact made in these charge files are incorporated by  reference as if copied here *in extenso*.

## STATEMENT OF  FACTS

7.  Plaintiff's residence is located in the  Saint Helena Parish Police Jury Ward 5.

8.  Ryan Byrd is the current Police Juror for Ward 5.

9.  Sometime in the year 2020, plaintiff asked  Byrd to visit plaintiff's home and to observe the condition of the  roads in plaintiff's neighborhood.

10. On this occasion, Byrd mentioned to plaintiff that the Parish was shorthanded and that the Parish was looking for a person who had a Commercial Driver License("CDL").

11.Plaintiff stated that he had a CDL and that he was looking for work.

12.Byrd recommended that plaintiff submit an application.

13. On or about August 11, 2020, plaintiff became  employed by the Police Jury as a CDL Driver and Tractor Operator at a starting wage of $17.50 per hour.

## THE MARCH 15, 2021 INCIDENT

14.     On Monday, March 15, 2021, plaintiff reported to work at the usual time, namely, 6:00 a.m.

15.     On this occasion, the Road Superintendent, Al Franklin, ("Franklin) assigned the plaintiff and  three other employees to the  task of cleaning out road ditches. Some of these ditches  contained untreated sewage.

16. This task would require at least one dumptruck and one knuckle boom excavator,

17. One employee would operate the excavator, one employee would drive the dump truck and two employees would flag traffic.

18. Franklin assigned plaintiff and George Hughes to operate the dump truck.

19. Plaintiff complained to Franklin that the dump truck in question had a pneumatic leak and that because of the leak, the tailgate would sometimes swing open on its own.

20. Franklin stated that he did not care who drove the truck and that plaintiff's crew would have use the truck with the pneumatic leak.

21. The crew arrived at the location and began cleaning the roadside ditches which contained sewage.

22. Plaintiff was driving the truck. When the truck was loaded, plaintiff pulled onto the highway en route to the dumpsite.

23. While the truck was in motion, some of the raw sewage spilled on the road.

24. Plaintiff drove the truck to the dumpsite, dumped the load, and returned to the jobsite.

25. Plaintiff got a tractor and pushed the sewage that had fallen on the road to the shoulder of the road.

26. After this occurrence, plaintiff asked George Hughes to drive the truck.

27. Hughes refused to drive the dumptruck.

28. Brannon Barnes, the Assistant Superintendent,  notified Franklin that plaintiff was refusing to drive the dumptruck,

29. Franklin ordered the  plaintiff to come into the office.

30. Plaintiff offered to drive another truck.

31. Franklin wrote the plaintiff up for insubordination and suspended plaintiff without pay. Exhibit___ is a copy of the Disciplinary Action Form signed by Franklin and dated March 15, 2021. The notation on Exhibit__  reads: **call the office on 3/18/21 at 7:00 a,m. for next assignment**.

32.  On March 18, 2021  plaintiff failed to call in at 7:00 a.m.

33. On that same day, Franklin called the plaintiff and told the plaintiff not to come to work until further notice.

34.    A few days later, plaintiff began experiencing nausea and diarhea. Plaintiff consulted plaintiff's primary physician, Doctor James. .

35. Doctor James stated that the plaintiff's condition was possibly related to plaintiff's exposure to raw sewage and directed that plaintiff get a tetanus shot.

36. As a result of this first suspension. Plaintiff was off work without pay for almost a full 30 days.

37. When plaintiff returned to work, there was a discussion concerning plaintiff's lost  wages.

38. At a meeting of the Police Jury, Frank Johnson, Police Jury President, stated that plaintiff should be paid the lost wages because the Personnel Policy states that the Superintendent only has the authority to suspend an employee for two days but that nevertheless, plaintiff will not be paid because plaintiff did not call in on March 18, 2021.

39. When plaintiff returned to work, Franklin told plaintiff that he would not fire plaintiff but that he(Franklin) would make the plaintiff quit.

40. About this same time, Franklin began calling plaintiff  **FATASS.**

### COVID 19 OUTBREAK

41. In June, 2021,  several Police Jury employees, plaintiff included, contracted began experiencing COVID 19 symptoms.

42. One employee came down with COVID 19 but continued to work, thus exposing other employees.

43. On June 30, 2021, plaintiff tested positive for COVID 19.

44. On July 1, 2021, plaintiff went out on paid leave.

45. The Police Jury allowed infected employees to take paid time off to recover from COVID 19.

46. Franklin expected plaintiff to return to work in seven days.

47. Franklin called plaintiff several times while plaintiff was out on leave and asked when plaintiff would be returning to work.

48. The Police Jury allowed the affected employees, plaintiff included, to take approximately three weeks of paid leave.

49. Franklin stated that after fourteen days plaintiff should be able to go back to work.

50. Franklin instructed plaintiff to get retested and if negative, to return to work.

## JULY 20, 2021 POLICE JURY EDICT

51. On July 20,2021, the Police Jury decreed that all employees must work from 6:00 a.m. to 7:00 p.m., seven days a week, until further notice and further, that any employee who fails to comply will be laid off until further notice.("the post-COVID 19 schedule"). Exhibit __.

## PLAINTIFF RETURNS TO WORK

52. On July 21, 2021, plaintiff returned to work.  At this time, plaintiff had not fully recovered from COVID.

53. Plaintiff worked the post -COVID19 schedule from July 21, 2021 until August 3, 2021 without incident.

## AUGUST 4, 2021 INCIDENT

54. On August 4, 2021, plaintiff reported to work at 6:00 a.m.

55. Employees usually assembled at the Police Jury mechanic shop.

56. On this occasion, plaintiff was the first employee to arrive.

57. Plaintiff was sitting in a chair in front of the mechanic shop and was on plaintiff's phone.

58. Franklin arrived at the jobsite and noticed plaintiff sitting in the chair.

59. The first word out of Franklin's mouth directed to plaintiff was: **HEY, FATASS.**

60. Plaintiff ignored Franklin's insult.

61. Franklin addressed plaintiff a second time: **HEY, FATASS**

62. Again, plaintiff ignored Franklin's insult.

63. Franklin addressed plaintiff a third time: **HEY, FATASS**

64. Again, plaintiff ignored Franklin's insult.

65. Franklin walked over to where plaintiff was sitting and kicked plaintiff on his legs and said: **HEY FATASS, YOU HEAR ME TALKING TO YOU?**

66. When Franklin kicked the plaintiff, Franklin knocked plaintiff's cell phone out of plaintiff's hands.

67. Plaintiff was understandably angry at being insulted three times by his supervisor and then being physically attacked by his supervisor, but despite being provoked, did not do or say anything to Franklin.

68. Plaintiff went on to plaintiff's regular assignment.

69. Sometime later that same day, plaintiff informed Ryan Byrd of the August 4, 2012 incident.

70. Byrd immediately contacted Franklin.

71. Byrd later told the plaintiff that Franklin denied the incident.

72. Franklin called the plaintiff and tried to apologize. Franklin's explanation was: **I just did that because I want you to fit in like everybody else.**

73. Around 10:00 or 11:00 a. m. August 4, 2021, plaintiff told Franklin that plaintiff was still feeling bad.

## AUGUST 5, 2021 INCIDENT

74. On Thursday, August 5, 2021, plaintiff notified Franklin that plaintiff was not feeling well and that plaintiff would not be able to see plaintiff's doctor until the following Monday, August 9, 2021.

75. Franklin notified the plaintiff that the plaintiff was laid off until further notice. Exhibit ___.

76. On Friday, August 6, 2021 plaintiff filed a complaint with the Saint Helena Parish Sheriff's office about the battery committed by Franklin.

77. On August 9, 2021, plaintiff was examined by his doctor and plaintiff's doctor advised that plaintiff **has shortness of breath and cough that has persisted from a recent covid 19 infections. This has limited his ability to work long days. Your**

**consideration in this matter is appreciated. I have added steroids and an inhaler to improve his symptoms.** Exhibit__.

78. On August 9, 2021, plaintiff contacted the New Orleans District Office of the Equal Employment Opportunity Commission("EEOC").

79. On August 10, 2021, plaintiff presented Exhibit___ and his grievance concerning Franklin. Exhibit ___ to all members of the Police Jury .

80. On October 6, 2021, an EEOC investigator interviewed the plaintiff.

81. On October 7, 2021, the EEOC notified the Police Jury that plaintiff had filed a charge.

82. At some point, Franklin told Jury member Byrd: **Jackson filed a complaint against us, we need to get rid of him.**

83. On October 14, 2021, plaintiff was in the hospital for three days with blood clots in both lungs.

84. Plaintiff continues to have COVID 19 related symptoms:  short of breath, memory lapses, brain fog.

85. On November 9, 2021, the Saint Helena Parish Police Jury terminated plaintiff's employment. Exhibit__.

## FIRST CAUSE OF ACTION
## DENIAL OF PROCEDURAL DUE PROCESS OF LAW

.

86.    The  Police Jury  did not provide plaintiff with a pre-deprivation notice containing the reasons the Police Jury was  proposing to suspend plaintiff on March 15, 2021.

.

87.  The  Police Jury  did not provide plaintiff with a pre-deprivation notice containing the reasons the Police Jury was  proposing to suspend plaintiff on August 5,  2021.

88. The  Police Jury  did not provide plaintiff with a pre-deprivation notice containing the reasons the Police Jury was  proposing to terminate plaintiff's employment on November 9, 2021.

 on March 15, 2021.

89.    The  Police Jury did not  provide the plaintiff with an opportunity to be heard prior to suspending plaintiff without pay.

90.    The  Police Jury  did not  provide the plaintiff with an opportunity to be heard prior to terminating plaintiff's employment.

.

91.    The  Police Jury  has adopted a personnel policy which provides a procedure for employee discipline.

92. The procedure for employee discipline  was adopted by the Police Jury at a regularly scheduled meeting  called for that purpose. The procedure for employee discipline is contained the  St. Helena Parish Police Jury  Employee Handbook and  Personnel Manual("the Manual"). A copy of this documents is attached and labelled Exhibit ___.

93.    There is no disclaimer in the Manual    indicating that the Police Jury  has authorized anyone to  deviate from the procedure for employee discipline.

94.    Plaintiff's continued employment with the  Police Jury is a property right protected by the Constitution of the United States because plaintiff's continued employment with the Police Jury cannot be  terminated except for cause expressed in writing and after a hearing at which hearing plaintiff is afforded the opportunity to respond to the charges and to present evidence in plaintiff's behalf.

95. The police jury did not afford plaintiff fair notice of the charges and an opportunity to respond to those charges prior to reaching the decisions to suspend plaintiff without pay and to terminate plaintiff's employment.

## SECOND CAUSE OF ACTION
## 42 USC § 1983 VIOLATION

96.    The police jury acted under color of state law to deprive plaintiff of plaintiff's federally protected rights.

97.    The police jury, having caused the violation of plaintiff's rights, is   liable under 42 USC § 1981 and 1983 and the Fourteenth Amendment to the plaintiff for the damages the plaintiff has suffered.

98.  The plaintiff's damages include loss of wages, past and future, loss of employability, past and future, mental and emotional  pain and suffering, fear, apprehension and worry, personal embarrassment and humiliation, injury and  loss of reputation.

## THIRD  CAUSE OF ACTION
## ADA  VIOLATION

99.    The Police Jury violated the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq ("ADA")  because the plaintiff was in the protected  group, was qualified to do, and was doing the work in a satisfactory manner,  and was subjected to adverse employment action.

100.   Plaintiff's request for relief from the COVID 19 schedule was a request for a reasonable accommodation.

101. The Police Jury failed to initiate the interactive process required by the ADA in order to determine if an accommodation is possible. Rather than engage in the interactive process, the Police Jury, acting through its Superintendent, Albert Franklin, suspended the plaintiff without pay and ultimately terminated plaintiff's employment.

## FOURTH CAUSE OF ACTION
## LADEA VIOLATION

102. Plaintiff was in the protected group, was qualified to do, and was doing the work in a satisfactory manner, and was subjected to adverse action because of the Police Jury's violations of the Louisiana Employment Discrimination Law, **LSA-RS 23:323**.

103. The Police Jury failed to initiate the interactive process in order to determine if an accommodation is possible. Rather than engage in the interactive process, the Police Jury, acting through its Superintendent, Albert Franklin, suspended the plaintiff without pay and ultimately terminated plaintiff's employment.

104. Plaintiff is entitled to compensatory damages, back pay, benefits, reinstatement, reasonable attorneys fees, interest and court costs as provided by **LSA-RS 23:325**.

105. Plaintiff's charge which was filed with the EEOC satisfies the notice requirement of **LSA-RS 23:325.C.**

## FIFTH CAUSE OF ACTION

## FMLA VIOLATION

106. The Police Jury meets the FMLA definition of a "covered employer" because the Parish and the 40th JDC are "public agencies" as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)).

107. Albert Franklin s meets the definition of any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.

108. Plaintiff was in the category of persons protected by the FMLA because plaintiff was employed for more than twelve months by the defendant at the time the cause of action arose.

109. To state a claim for interference under the FMLA, a plaintiff must allege and prove:

(1) plaintiff was exercising a right protected by the FMLA;
(2) an adverse action by the employer interfered with the plaintiff's exercise of FMLA protected rights;
(3) the employer's adverse action was related to the exercise or attempted exercise of plaintiff's FMLA rights.

110. The facts of this case as stated in this complaint   set out a *prima facie* case of FMLA liability on the part of  all named defendants.

111.  On August 5, 2021, plaintiff presented an oral request for  for personal medical leave because of plaintiff's serious health condition.

112. Requesting personal  medical leave is an FMLA protected right.

113. Rather than comply with the FMLA, Franklin immediately suspended plaintiff without pay.

114. Suspension without pay is  *per se* an adverse employment action.

115. There was no intervening or superseding cause between plaintiff's oral request for personal medical leave and the unpaid suspension and the November 9,

116. The   plaintiff was suspended and later  fired  because the plaintiff exercised  plaintiff's FMLA protected rights.

117.   Defendants' violation of the FMLA  caused the plaintiff damage.

118.Plaintiff's damages are loss of earnings past, present and future, loss of benefits past, present and future.

119.   Defendants willfully violated the FMLA and are therefore liable for liquidated damages.

120. There is no evidence that all defendants:

(a) acted in good faith in believing that its act or omission was not a violation of the FMLA; and

(b) that all defendants  had reasonable grounds for believing that its act or omission was not a violation of the FMLA.

121. The allegations of fact as stated in this complaint also satisfy an FMLA *interference claim*  because:

a)the defendants are covered by the FMLA;

b)plaintiff  was eligible for FMLA leave;

c)plaintiff gave notice of the intention to take FMLA leave;

d) the defendants  took an  adverse action which interfered with plaintiff's right and ability to take FMLA leave;

e) the defendant's action was related to the exercise or attempted exercise of the employee's FMLA rights

122. The allegations of fact as stated in this complaint also satisfy an FMLA *retaliation* claim *claim*  because:

a) plaintiff was exercising an FMLA protected right;

b) defendants retaliated against plaintiff for exercising plaintiff's FMLA protected right;

c) defendants response to plaintiff's FMLA request was an adverse action;

d) the defendants' adverse action was in direct response to plaintiff's FMLA protected activity.

17

123.   Defendants' violation of the FMLA  has caused the plaintiff damage.

124. Plaintiff's damages are loss of earnings past, present and future, loss of benefits past, present and future.

**SIXTH CAUSE OF ACTION**
**RETALIATION**

125.The Police Jury retaliated against plaintiff by terminating plaintiff's employment because plaintiff filed  an EEOC charge.

126. Plaintiff's damages are loss of earnings past, present and future, loss of benefits past, present and future.

**SEVENTH  CAUSE OF ACTION**
**WORKER COMPENSATION RETALIATION**

127.        Plaintiff was discharged from employment because  plaintiff asserted  a claim for benefits under the provisions LSA-RS 23:1021 et seq. as well as under the FMLA which is a law of the United States.

128. LSA-RS 23:1361.C. provides that any person who has been discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have

earned but for the discrimination based upon the  earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with reasonable attorney's fees and court costs.

129. LSA-RS 23:1361.D provides that the rights and remedies provided for in this Section shall not limit or in any way affect any rights and remedies that may be available under the provisions of any other state or federal law.

## EIGHTH CAUSE OF  ACTION
## STATE LAW BATTERY

131. On August 4, 2021, defendant Franklin committed a battery on the plaintiff.  LSA-RS 14:33 defines **battery** as the intentional use of force on the person of another.  This statute is in chapter 1 of Title 14 of the Revised Statutes of 1950.

132. Article 3493.10 of the Civil Code provides as follows:

 Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except as provided in Article 3496.2, are subject to a liberative prescription of two years. This prescription commences to run from the day injury or damage is sustained

133. The damages sustained by plaintiff as a result of Franklin's battery are physical pain and suffering, mental and emotional suffering, embarrassment, humiliation, past and future.

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this court:

(1)    Declare that the employment practices complained of are unlawful;

(2)    Permanently enjoin the defendants, their  agents, officers, and employees from engaging in all practices found by this court to be in violation of the law;

(3)    Order reinstatement of the plaintiff, together with an award of all salary, benefits, seniority and all other employment emoluments plaintiff would have received absent unlawful discrimination from date of denial of promotion until time of trial; or

(4)    In lieu of reinstatement, that the court award:
    (a)    backpay from date of  all adverse employment actions to tion to time of trial;
    (b)    front pay;
    (c)    future loss of earnings and/or past, present and future compensatory damages, general damages, and all other relief available pursuant to law;

(5)    Order the defendants to make the plaintiff whole by paying  such monetary and non-moetary benefits in amounts to be proved at trial;

(6)    Order the defendants to pay liquidated damages in consequence of the defendants wilful violation of the Family and Medical Leave Act:

(7)    Retain jurisdiction over this action to insure full compliance with the Court's orders, and require the defendants to file such reports as the Court deems necessary to insure compliance;

(8)   Order the defendants to pay plaintiff's costs and expenses and reasonable attorneys' fees as provided by law;

(9)   Award pre-judgment interest as provided by law;

(10)  Grant such other and further relief to the plaintiff as the Court deems just and proper.

(11)  Grant a trial by jury.

HOGAN ATTORNEYS

*Thomas J. Hogan, Jr.*
_____
THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274
Hammond, LA 70404
(985)542-7730

thogan4800@gmail.com

Attorney for plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTWAIN T. JACKSON

CIVIL ACTION

VERSUS
SAINT HELENA PARISH POLICE JURY;
ALBERT FRANKLIN

TRIAL BY JURY

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury.

HOGAN ATTORNEYS

*Thomas J. Hogan, Jr.*
_____
THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274
Hammond, LA 70404
(985)542-7730

thogan4800@gmail.com

Attorney for plaintiff