UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF LOUISIANA

ANTWAIN T. JACKSON                                      CIVIL ACTION

VERSUS
SAINT HELENA PARISH POLICE JURY;          3:22-cv-00834-SDD-SDJ
ALBERT FRANKLIN

                                                        TRIAL BY JURY

**FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1.   Plaintiff invokes this Court's jurisdiction pursuant to 42 USC §1983, 42 §12117,

42 § 2000e-5,  28 USC §1343(4), and 28 USC §1367.

2.     The factual circumstances alleged in this complaint occurred in the Middle

District of Louisiana.

**PARTIES**

3.     Plaintiff is a citizen of the United States and a resident of Saint Helena   Parish,

Louisiana.

4.     Defendant Saint Helena Parish Police Jury("the Police Jury") is a political subdivision of the  State of Louisiana and is the governing authority of Saint Helena Parish, Louisiana.  The Police Jury   employs thirty or more employees.

5.     Defendant Albert Franklin at the time   alleged in this complaint was   and currently is employed by the Police Jury in the capacity of   Road Superintendent. Franklin is being sued in his individual capacity and in his official capacity as an employee of the Police Jury.

## ADMINISTRATIVE PROCEDURES

6.     Plaintiff timely filed charges of employment discrimination and retaliation with the District Office of the Equal Employment Opportunity Commission. Those charge numbers are: 461-2021-01976; 461-2021-01978; 461-2021-01979; 461-2022-00276. That agency issued a right to sue letter which is attached and is labeled Exhibit 1.  All allegations of fact made in these charge files are incorporated by  reference as if copied here *in extenso*.

## STATEMENT OF  FACTS

7.     Plaintiff's residence is in the  Saint Helena Parish Police Jury Ward 5.

 8.     Ryan Byrd is the current Police Juror for Ward 5.

9.     Sometime in the year 2020, plaintiff asked  Byrd to visit plaintiff's home and to observe the condition of the  roads in plaintiff's neighborhood.

10.     On this occasion, Byrd mentioned to plaintiff that the Parish was shorthanded and that the Parish was looking for a person who had a Commercial Driver License("CDL").

11.     Plaintiff stated that he had a CDL and that he was looking for work.

12.     Byrd recommended that plaintiff submit an application.

13.     On or about August 11, 2020, plaintiff became  employed by the Police Jury as a CDL Driver and Tractor Operator at a starting wage of $16.00  per hour. Plaintiff received a pay raise to $17.50 per hour.

## THE MARCH 15, 2021 INCIDENT

14.     On Monday, March 15, 2021, plaintiff reported to work at the usual time, namely, 6:00 a.m.

15.     On this occasion, the Road Superintendent, Albert  Franklin, ("Franklin) assigned the plaintiff and  three other employees to the  task of cleaning out road ditches. Some of these ditches  contained untreated sewage.

16.     This task would require at least one dumptruck and one knuckle boom excavator.

17.   One employee would operate the excavator, one employee would drive the dump truck, and two employees would flag traffic.

18.   Franklin assigned plaintiff and George Hughes to operate the dump truck.

19.   Plaintiff complained to Franklin that the dump truck in question had a pneumatic leak and that because of the leak, the tailgate would sometimes swing open on its own.

20.   Franklin stated that he did not care who drove the truck and that plaintiff's crew would have to use the truck with the pneumatic leak.

21.   The crew arrived at the location and began cleaning the roadside ditches which contained sewage.

22.   Plaintiff was driving the truck. When the truck was loaded, plaintiff pulled onto the highway en route to the dumpsite.

23.   While the truck was in motion, some of the  raw sewage spilled on the road.

24.   Plaintiff drove the truck to the dumpsite, dumped the load, and returned to the jobsite.

25.   Plaintiff got a tractor and pushed the sewage that had fallen on the road to the shoulder of the road.

26.   After this occurrence, plaintiff asked George Hughes to drive the truck.

27.   Hughes refused to drive the dumptruck.

28.   Brannon Barnes, the Assistant Superintendent,  notified Franklin that plaintiff was refusing to drive the dumptruck.

29.   Franklin ordered the  plaintiff to come into the office.

30.   Plaintiff offered to drive another truck.

31.   Franklin wrote the plaintiff up for insubordination and suspended plaintiff without pay. Exhibit 2 is a copy of the Disciplinary Action Form signed by Franklin and dated March 15, 2021. The notation on Exhibit 2 reads: **call the office on 3/18/21 at 7:00 a,m. for next assignment**.

32.   On March 18, 2021  plaintiff failed to call in exactly at 7:00 a.m.

33.   On that same day, Franklin called the plaintiff and told the plaintiff not to come to work until further notice.

34.   A few days later, plaintiff began experiencing nausea and diarrhea. Plaintiff consulted plaintiff's primary physician, Doctor James.

35.   Doctor James stated that the plaintiff's condition was possibly related to plaintiff's exposure to raw sewage and directed that plaintiff get a tetanus shot.

36.   As a result of this first suspension. Plaintiff was off work without pay for almost a full 30 days.

37.   When plaintiff returned to work, there was a discussion concerning plaintiff's lost  wages.

38.   At a meeting of the Police Jury on March 23, 2021, Frank Johnson, Police Jury President, stated that plaintiff should be paid the lost wages because the Personnel Policy states that the Superintendent only has the authority to suspend an employee for two days but that nevertheless, plaintiff will not be paid because plaintiff did not call in on March 18, 2021.

39.   When plaintiff returned to work, Franklin told plaintiff that he would not fire plaintiff but that he(Franklin) would make the plaintiff quit.

40.   About this same time, Franklin began calling plaintiff  **FATASS.**

### COVID 19 OUTBREAK

41.   In June, 2021,  several Police Jury employees, plaintiff included, began experiencing COVID 19 symptoms.

42.   One employee came down with COVID 19 but continued to work, thus exposing other employees.

43.   On June 30, 2021, plaintiff tested positive for COVID 19.

44.   On July 1, 2021, plaintiff went out on paid leave.

45.   The Police Jury allowed infected employees to take paid time off to recover from COVID 19.

46.   Franklin expected plaintiff to return to work in seven days.

47.    Franklin called plaintiff several times while plaintiff was out on leave and asked when plaintiff would be returning to work.

48.    The Police Jury allowed the affected employees, plaintiff included, to take approximately three weeks of paid leave.

49.    Franklin stated that after fourteen days plaintiff should be able to go back to work.

50.    Franklin instructed plaintiff to get retested and if negative, to return to work.

## JULY 20, 2021 POLICE JURY EDICT

51.    On July 20,2021, the Police Jury decreed that all employees must work from 6:00 a.m. to 7:00 p.m., seven days a week, until further notice and further, that any employee who fails to comply will be laid off until further notice.("the post-COVID 19 schedule"). Exhibit 3.

## PLAINTIFF RETURNS TO WORK

52.    On July 21, 2021, plaintiff returned to work although plaintiff had not fully recovered from COVID.

53.    Plaintiff worked the post -COVID19 schedule from July 21, 2021 until August 3, 2021 without incident.

## AUGUST 4, 2021 INCIDENT

54.    On August 4, 2021, plaintiff reported to work at 6:00 a.m.

55.    Employees usually assembled at the Police Jury mechanic shop.

56.  On this occasion, plaintiff was the first employee to arrive.

57.  Plaintiff was sitting in a chair in front of the mechanic shop and was on plaintiff's phone.

58.  Franklin arrived at the jobsite and noticed plaintiff sitting in the chair.

59.  The   first word out of Franklin's mouth directed to plaintiff was: **HEY, FATASS.**

60.  Plaintiff ignored Franklin's insult.

61.  Franklin  addressed plaintiff a second time: **HEY, FATASS.**

62.  Again, plaintiff ignored Franklin's insult.

63.  Franklin  addressed plaintiff a third time: **HEY, FATASS.**

64.  Again, plaintiff ignored Franklin's insult.

65.  Franklin walked over to where plaintiff was sitting and kicked plaintiff on his legs and said: **HEY FATASS, YOU HEAR ME TALKING TO YOU?**

66.  When Franklin kicked the plaintiff, Franklin knocked plaintiff's cell phone out of plaintiff's hands.

67.   Plaintiff was understandably angry at being insulted three times by his supervisor and then being physically attacked by his supervisor, but despite being provoked, did not  do or say anything to Franklin.

68.   Plaintiff went on to plaintiff's regular assignment.

69.   Sometime later that same day, plaintiff informed Ryan Byrd of the August 4, 2012 incident.

70.   Byrd immediately contacted Franklin.

71.   Byrd later told the plaintiff that Franklin denied the incident.

72.   Franklin called the plaintiff and tried to apologize. Franklin's explanation was:

**I just did that because I want you to fit in like everybody else.**

73.   Around 10:00 or 11:00 a. m.  August 4, 2021, plaintiff told Franklin that plaintiff was not feeling well.

## AUGUST 5, 2021 INCIDENT

74.   On Thursday, August 5, 2021, plaintiff notified Franklin that plaintiff was not feeling well and that plaintiff would not be able to see plaintiff's doctor until the following Monday, August 9, 2021.

75.   Franklin notified the plaintiff that the plaintiff was laid off until further notice. Exhibit 4.

76.   On Friday, August 6, 2021 plaintiff filed a complaint with the Saint Helena Parish Sheriff's office about the battery committed by Franklin.

77.   On August 9, 2021, plaintiff was examined by his doctor and plaintiff's doctor advised that plaintiff **has shortness of breath and cough that has persisted from a recent covid 19 infection. This has limited his ability to work long days. Your**

**consideration in this matter is appreciated. I have added steroids and an inhaler to improve his symptoms.** Exhibit 5.

78. On August 9, 2021, plaintiff contacted the New Orleans District Office of the Equal Employment Opportunity Commission("EEOC").

79. On August 10, 2021, plaintiff presented Exhibit 5 and his grievance concerning Franklin to all members of the Police Jury . Exhibit 6.

80. On August 24, 2021, the Police Jury scheduled a meeting at which plaintiff's employment status would be discussed.

81. On August 24, 2021, the Police Jury cancelled the meeting.

82. On October 6, 2021, an EEOC investigator interviewed the plaintiff.

83. On October 7, 2021, the EEOC notified the Police Jury that plaintiff had filed a charge.

84. At some point, Franklin told Jury member Byrd: **Jackson filed a complaint against us, we need to get rid of him.**

85. On October 14, 2021, plaintiff was in the hospital for three days with blood clots in both lungs.

86. Plaintiff continues to have COVID 19 related symptoms: shortness of breath, memory lapses, brain fog, and fatigue.

87. On November 9, 2021, the Saint Helena Parish Police Jury terminated plaintiff's employment. Exhibit 7.

## FIRST CAUSE OF ACTION
## DENIAL OF PROCEDURAL DUE PROCESS OF LAW

88.   The  Police Jury  has adopted a personnel policy which provides a procedure for employee discipline.

89.   The procedure for employee discipline  was adopted by the Police Jury at a regularly scheduled meeting  called for that purpose. The procedure for employee discipline is contained the  St. Helena Parish Police Jury  Employee Handbook and Personnel  Manual("the  Manual"). A  copy  of  this  documents  is   attached  and labelled Exhibit 8.

90.   There is no disclaimer in the Manual    indicating that the Police Jury  has authorized anyone to  deviate from the procedure for employee discipline.

91.   Plaintiff's continued employment with the  Police Jury is a property right protected by the Constitution of the United States because plaintiff's continued employment with the Police Jury cannot be  terminated except for cause expressed in writing and after a hearing at which hearing plaintiff is afforded the opportunity to respond to the charges and to present evidence in plaintiff's behalf.

92. Exhibit 8 at page 13  specifically provides:

> A  permanent  employee  shall  not  be  discharged  or disciplined, except upon written and signed charges from his or her Department Head and after a hearing before the Police Jury.

11

At least (10) days in advance of the hearing, the Department Head with the approval of the Police Jury shall furnish the affected employee a copy of the written charges against him or her.

The employee shall have the right to appear before the Police Jury  with witnesses in his/her behalf and with council of his selection, all of whom shall be heard by the Police Jury at said hearing.

If a permanent employee is found guilty of the offense charged,   after due hearing, and is disciplined or discharged by the Police Jury, the Department Head supervisor shall furnish the employee with   a   written statement of the recommendation or removal or discipline, which shall include the exact reason, offense or instance upon which the recommendation is based.

93.    The Police Jury did not define  **permanent employee** in the  Manual. Exhibit 8.

94. Black's Law Dictionary, Second Edition defines **permanent employee**  as follows:

An employee who is hired to work without any time frame for his exit. For instance, a contractual employee might have his contract rescinded, or will have to leave if it

is not renewed, but a permanent employee has no such constraint.

95.    Plaintiff was hired by the Police Jury to work without any time frame for his exit.

96.    Plaintiff was a **permanent employee** of the Police Jury.

97.    The Department Head did not provide plaintiff with a copy of the written charges against plaintiff in connection with the March 15, 2021 incident.

98.   The Police Jury did not provide  plaintiff  with a copy of the written and signed charges by the Department Head ten days in advance of the March 23, 2021 meeting.

99.    The Police Jury did not inform  plaintiff in writing that he would have an opportunity to be present at the March 23, 2021 meeting.

100.   The Police Jury did not inform the plaintiff in writing that he could retain counsel and present documents and witnesses at the March 23, 2021 meeting.

102.    Following the March 23, 2021 meeting, the Police Jury did not furnish the plaintiff with a written statement of the discipline and the exact reasons on which the discipline was based.

103.   The Department Head did not provide plaintiff with a copy of the written charges against plaintiff in connection with the August 5, 2021 incident.

104.   The Police Jury did not provide  plaintiff  with a copy of the written and signed charges by the Department Head ten days in advance of any meeting at which the

charges against plaintiff as a result of the August 5, 2021 incident would be discussed.

105.   The Police Jury did not inform  plaintiff in writing that he would have an opportunity to be present at any meeting at which meeting  the charges against plaintiff as a result of the August 5, 2021 incident would be discussed.

106.   The net effect of the August 5, 2021 incident was that plaintiff was suspended without pay from August 5, 2021 until the date of plaintiff's termination, November 9, 2021.

107.   Following the August 5, 2021 incident, the  Police Jury did not furnish the plaintiff with a written statement of the discipline and the exact reasons on which the discipline was based.

## SECOND CAUSE OF ACTION
## 42 USC § 1983 VIOLATION

108.   The Police Jury acted under color of state law to deprive plaintiff of plaintiff's  federally protected rights.

109.   The Police Jury, having caused the violation of plaintiff's rights, is    liable under 42 USC § 1981 and 1983 and the Fourteenth Amendment to the plaintiff for the damages the plaintiff has suffered.

110.  The plaintiff's damages include loss of wages, past and future, loss of employability, past and future, mental and emotional  pain and suffering, fear,

14

apprehension and worry, personal embarrassment and humiliation, injury and loss of reputation.

## THIRD CAUSE OF ACTION
## ADA VIOLATION

111.   The Police Jury violated the Americans with Disabilities Act of 1990, 42 USC § 12101 et seq ("ADA")  because the plaintiff was in the protected  group, was qualified to do, and was doing the work in a satisfactory manner,  and was subjected to adverse employment action.

112.   Plaintiff   experienced ongoing,   intermittent multiple-day headaches, dizziness, brain fog, and difficulty remembering or concentrating which plaintiff's treating physician attributed  to the COVID-19 virus which means that plaintiff is substantially limited in neurological and brain function, concentrating, and/or thinking, among other major life activities.

113. Plaintiff  received  supplemental oxygen for breathing difficulties and has shortness of breath, associated fatigue, and other  COVID-19 virus-related effects that last, or are expected to last, for several months and is therefore  substantially

limited in respiratory function, and possibly major life activities involving exertion, such as walking.

114.  Plaintiff experienced heart palpitations, chest pain, shortness of breath, and related effects due to the COVID-19 virus that last, or are expected to last, for several months. Plaintiff is substantially limited in cardiovascular function and circulatory function, among others.

115.  Plaintiff may have  "<u>long COVID</u>," because plaintiff's symptoms have persisted to the present day.

116.  Plaintiff has an actual disability within the meaning of the ADA.

117.  Plaintiff has a record of disability within the meaning of the ADA.

118.  Plaintiff is a qualified individual with a disability within the meaning of the ADA.

119.  Plaintiff's request for relief from the post-COVID 19 schedule was a request for a reasonable accommodation.

120.  The Police Jury received plaintiff's written request for a reasonable accommodation.

121.  The ADA required the Police Jury to provide a reasonable accommodation to the plaintiff unless to do so would produce an undue hardship.

122.   The  ADA required the Police Jury  to initiate an interactive process with the plaintiff  in order to determine if an accommodation is possible.

123.   The Police Jury is aware of its responsibilities under the ADA because the ADA is specifically mentioned in Section 2.4 of the Manual which reads as follows.

> Moreover, in compliance with the Americans with Disabilities Act(ADA), the Police Jury provides reasonable accommodations to qualified individuals with disabilities fully required by law. A medical certification may be required of both the disability and the need for accommodation. Keep in mind tht the Police Jury can only seek to accommodate the known physical or mental limitations of an otherwise qualified individual. Therefore, it is the applicant's responsibility to come forward
>
> If you need an accommodation. **The Police Jury will engage in an interactive process with the employee to identify possible accommodations.** (emphasis added)

124.   The Police Jury  did not  initiate the interactive process  with the plaintiff  in order to determine if  the  accommodation  plaintiff requested was possible.

125.   The Police Jury did not request additional information from plaintiff's treating physician concerning plaintiff's request for a reasonable accommodation.

126.   The Police Jury did not request that plaintiff be examined by a physician chosen by the Police Jury.

127.    Rather than engage in the interactive process, the Police Jury, acting through its Superintendent, Albert Franklin, suspended the plaintiff without pay and ultimately terminated plaintiff's employment.

## FOURTH CAUSE OF ACTION
## LADEA VIOLATION

128.   Plaintiff was in the protected  group, was qualified to do,  and was doing the work in a satisfactory manner, and was subjected to adverse action because of the Police Jury's violations of the Louisiana Employment Discrimination Law, **LSA-RS 23:323**.

129. The Police Jury failed to initiate the interactive process in order to determine if an accommodation is possible. Rather than engage in the interactive process, the Police Jury, acting through its Superintendent, Albert Franklin, suspended the plaintiff without pay and ultimately terminated plaintiff's employment.

130.  Plaintiff is entitled to   compensatory damages, back pay, benefits, reinstatement, reasonable attorneys fees, interest and court costs as provided by **LSA-RS 23:325**.

131.  Plaintiff's charge which was filed with the EEOC satisfies the notice requirement of  **LSA-RS 23:325.C.**

## FIFTH CAUSE OF ACTION

**RETALIATION**

132.    The Police Jury retaliated against plaintiff by terminating plaintiff's employment because plaintiff filed an EEOC charge.

133.    The Police Jury retaliated against plaintiff because plaintiff requested a reasonable accommodation.

134.    Plaintiff's damages are loss of earnings past, present and future, loss of benefits past, present and future.

**SIXTH CAUSE OF ACTION**
**STATE LAW BATTERY**

135. On August 4, 2021, defendant Franklin committed a simple battery on the plaintiff. LSA-RS 14:35.

136.    LSA-RS 14:33 defines **battery** as the intentional use of force on the person of another.

137.    The facts as alleged in this complaint indicate that Franklin had specific intent to use force on the plaintiff.

138. The facts as alleged in this complaint indicate that Franklin had general intent to use force on the plaintiff.

139.    The facts as alleged in this complaint indicate that the plaintiff did not consent to Franklin committing a battery on plaintiff's person.

140.   Article 3493.10 of the Civil Code provides as follows:

Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except as provided in Article 3496.2, are subject to a liberative prescription of two years. This prescription commences to run from the day injury or damage is sustained.

141.   The damages sustained by plaintiff as a result of Franklin's battery are physical pain and suffering, mental and emotional suffering, embarrassment, humiliation, past and future.

142.   The battery committed by Franklin occurred during working hours and on Police Jury property and the Police Jury is liable for the torts committed by its employees which occur in the workplace and during working hours.

**PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this court:

(1)   Declare that the employment practices complained of are unlawful;

(2)   Permanently enjoin the defendants, their  agents, officers, and employees from engaging in all practices found by this court to be in violation of the law;

(3)   Order reinstatement of the plaintiff, together with an award of all salary, benefits, seniority and all other employment emoluments plaintiff would have received absent unlawful discrimination from date of denial of promotion until time of trial; or

(4)    In lieu of reinstatement, that the court award:

    (a)    backpay from date of  all adverse employment actions to tion to time of trial;

    (b)    front pay;

    (c)    future loss of earnings and/or past, present and future compensatory damages, general damages, and all other relief available pursuant to law;

(5)    Order the defendants to make the plaintiff whole by paying  such monetary and non-monetary benefits in amounts to be proved at trial;

(6)     Retain jurisdiction over this action to insure full compliance with the Court's orders, and require the defendants to file such reports as the Court deems necessary to insure compliance;

(7)    Order the defendants to pay plaintiff's costs and expenses and reasonable attorneys' fees as provided by law;

(8)    Award pre-judgment interest as provided by law;

(9)    Grant such other and further relief to the plaintiff as the Court deems just and proper.

(10)    Grant a trial by jury.

HOGAN ATTORNEYS

*Thomas J. Hogan, Jr.*

_____
THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274
Hammond, LA 70404
(985)542-7730

thogan4800@gmail.com

Attorney for plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTWAIN T. JACKSON

CIVIL ACTION

VERSUS
SAINT HELENA PARISH POLICE JURY;
ALBERT FRANKLIN

TRIAL BY JURY

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury.

HOGAN ATTORNEYS

*Thomas J. Hogan, Jr.*

_____
THOMAS J. HOGAN, JR., T.A.
Bar Roll No. 06908
P. O. Box 1274

22

Hammond, LA 70404
(985)542-7730

thogan4800@gmail.com

Attorney for plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on  February 17, 2023, I electronically filed the foregoing

with the Clerk of court by using the CM/ECF system which will send a notice of

electronic filing to the following: **Christopher Moody, Albert D. Giraud**.  I further

certify that I mailed the foregoing document and the notice of electronic filing by

first-class mail to the following non-CM/ECF participants: **NONE.**

*/s/ Thomas J. Hogan, Jr.*

_____